# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA VALLES,<br><br>        Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:13-CV-01226-SMS<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(Doc. 1) |

Plaintiff Maria Valles, by her attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 301 *et seq.* This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Honorable Sandra M. Snyder, U.S. Magistrate Judge. After a review of the complete record and applicable law, the Court will reverse the Commissioner's decision and remand for further proceedings.

1

**BACKGROUND**

**I. Procedural History**

On February 4, 2010, Plaintiff applied for supplemental security income. Plaintiff alleges onset of disability on March 15, 2009. The Commissioner initially denied the claims on August 12, 2010, and upon reconsideration again denied the claims on October 18, 2010. Plaintiff filed a timely request for a hearing on November 24, 2010.

On January 5, 2012, represented by counsel, Plaintiff appeared and testified at a video hearing presided over by Betty Roberts Barbeito, Administrative Law Judge ("the ALJ"). *See* 20 C.F.R. 404.929 *et seq.* An impartial vocational expert, Judith Najarian, also appeared and testified.

On February 9, 2012, the ALJ denied Plaintiff's application. The Appeals Council denied review on June 10, 2013. Accordingly, the ALJ's decision became the Commissioner's final decision. On August 5, 2013, Plaintiff filed a complaint seeking this Court's review.

**II. Administrative Record**

**A. Plaintiff's Testimony (January 5, 2012)**

Plaintiff, born September 15, 1970, lived in a house with her son and niece (ages 18 and 19, respectively, at the time of the hearing). Plaintiff attended high school through 11th grade, had no additional education or training, and was able to communicate in English. Plaintiff testified that she last worked in 2010 as a housekeeper and caretaker and had prior work cleaning houses. Plaintiff testified that she was not currently working and had not worked since 2010. Plaintiff testified she was left handed, five feet tall, and weighed 179 pounds.

At the hearing, Plaintiff amended her alleged onset of disability from March 15, 2009 to February 4, 2010, and testified that she has constant pain in her left leg and lower back. She testified that after back surgery in September 2010, her pain diminished "for maybe a couple of months," but since then the pain had returned. Plaintiff described experiencing "a lot of pain" and that she was "scared sometimes . . . to bend [down]," because it felt "like I'm going to paralyze myself."

Plaintiff testified that she cannot hold her grandchildren, and that the most weight that she could lift comfortably was "a gallon of milk." She testified that she could bend down to just below her knees. She stated that she could stand for maybe 40 minutes "at the most," then would have to sit down to rest. Plaintiff reported pain when sitting, and that she could not sit for more than an hour; for example, she could not drive from Bakersfield to Tulare (about an hour). Plaintiff stated that when home she lays in bed due to the back pain, rather than sitting down. She testified that in an eight hour day she could sit for approximately 1.5 to two hours, cumulatively, if alternating between sitting, standing, and walking.

Plaintiff testified that her duties in 2010 as a part-time caretaker and housekeeper included dispensing medicine, preparing meals, and doing light housekeeping. She testified that she worked four or five hours per day, three days per week. In her prior position as a house cleaner, Plaintiff testified that she worked two to three hours per day, two days per week. Plaintiff testified that she stopped working as a house cleaner because "it was just too hard for my back to keep trying to jeopardize my back, whatever I was trying to do."

Plaintiff described her typical daily activities as follows: "I'm most [sic] laying, like always in bed, because, like, I don't have a - - it's just I'm always locked up in my room. . . maybe half of the day I'm in bed." She testified that she tries to vacuum, mop, dust, and pick up around the house, but "it's not easy." She reported that her niece and son did the "hard work" around the house, such as the laundry, vacuuming, and mopping, but that Plaintiff did still cook "some." She testified that she did not have activities outside the home, did not drink or use illicit drugs, but that she drove, and went to church regularly. Plaintiff testified that she could read "not good at all, or write," could not read a newspaper, and had attended special education classes while in school.

Plaintiff testified that lying on her side helped relieve the pain in her leg and back. Describing her left leg, she testified that pain goes "all the way to my toe," and constantly feels "like little needles poking me." Plaintiff testified that she went to her medical clinic "twice a week."

Plaintiff reported using heating pads or ice packs to relive her pain, as well as a kneepad that she wore "every day." To manage her pain, Plaintiff testified that she used prescription medications, including Norcos (four times per day), a muscle relaxer Somas (three times per day), and Prednisone for unexplained reasons. Plaintiff stated that she experienced drowsiness as a side effect of her medications. Plaintiff testified that physical therapy did not help or alleviate her pain.

### B. Medical Evidence

The ALJ considered the following medical records and opinions. Treating and examining physicians rendered opinions as to the Plaintiff's abilities. The objective medical evidence confirmed the diagnosis of <u>status post open reduction internal fixation of the right femur, healed, with residual chronic lumbar strain/sprain; obesity; and depressive disorder not otherwise specified</u>. There are substantial treatment records. The ALJ did not consider medical records or opinions dated before Plaintiff's alleged onset date.

Medical records show that Plaintiff had an MRI of her lumbosacral spine on April 9, 2010. The impression was broad based disc bulge with small central protrusion at L4-5 causing mass effect upon the anterior thecal sac and mild to moderate bilateral neural foraminal stenosis. The medical records noted hemilaminectomy at the time. Medical records show that Plaintiff was obese; records show she weighed 218 pounds, was five feet tall with a body mass index of over 41, where a BMI of 30 is considered obese. Plaintiff was not receiving and had no history of mental health treatment or medications. The record contains no evidence of ongoing mental health treatment or counseling.

In June 2010, consultative physician Michael Wlasichuk, M.D., reviewed Plaintiff's medical history and performed a complete orthopedic examination at the request of the state agency. He observed that Plaintiff walked fairly normally and was able to walk on her heels and toes. Although Plaintiff complained of pain and discomfort in her lumbar spine, Dr. Wlasichuk observed no evidence of spasm and no reversal of the lordotic curve. Dr. Wlasichuk noted that Plaintiff was able to flex her trunk with the tips of her fingers six inches from the floor, and reported that her FABER

examination was normal.  Dr. Wlasichuk noted that Plaintiff had normal motor strength; her knee and ankle joints were normal; and her sensory exam was normal, except Plaintiff's left lower extremity showed sensory input abnormalities below the knee including the toes and great toe. Dr. Wlasichuk opined that Plaintiff may lift and carry 10 pounds occasionally and five pounds frequently; she could stand and/or walk two to four hours per day; she could sit less than six hours per day; and her exertional limitations included climbing, pushing, pulling, crouching, crawling, and balancing.  Pending further orthopedic or neurological consultation, Dr. Wlasichuk considered Plaintiff a possible candidate for surgery.

On July 23, 2010, consultative psychiatrist Nadine J. Kravatz, Psy.D., examined Plaintiff at the request of the state agency.  Dr. Kravatz indicated that Plaintiff had functional limitations, including a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Kravatz observed that Plaintiff's attention and concentration were fairly intact, and that she was able to do simple cognitive tasks requiring attention or concentration.  Dr. Kravatz noted that Plaintiff was not significantly limited in her ability to understand and remember locations and work-like procedures or very short and simple instructions, but she was moderately limited in her ability to understand and remember more detailed instructions.  Dr. Kravatz determined that Plaintiff was able to sustain her attention and concentration for extended periods; could perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; was able to sustain an ordinary routine without special supervision; and was able to work in coordination with or proximity to others without being distracted.  Dr. Kravatz opined that although Plaintiff may experience difficulty with more complex instructions, she is able to perform significant aspects of her ADLs.  Dr. Kravatz observed no significant limitations for Plaintiff's social interactions or adaptations.  Dr. Kravatz noted that the Plaintiff's IQ score was in the borderline range.  Dr. Kravatz determined that the evidence did not establish the presence of any chronic mental illness or disorder

that would cause more than a minimal limitation of ability to do any basic work activity. Dr. Kravatz diagnosed Plaintiff with Depressive Disorder, not otherwise specified.

Plaintiff sought treatment from neurologist Timothy M. Wiebe, M.D., at the Bakersfield Neuroscience & Spine Institute on August 3, 2010. Dr. Wiebe reported that Plaintiff weighed 218 pounds with a BMI exceeding 41. Dr. Wiebe noted a normal physical examination of Plaintiff, who in general was "a young female who is obese." Dr. Wiebe observed that Plaintiff was alert and oriented with normal speech. Dr. Wiebe wrote that Plaintiff's station and gait were unremarkable, but upon motor examination he suspected that she had a "left foot drop." Upon review of her MRI of the lumbar spine, Dr. Wiebe noted that it demonstrated loss of height at the L4-5 intervertebral disc which was herniated dorsally to impinge the lateral recesses and adjacent neuroforamina. Dr. Wiebe also found an overlying left laminectomy defect and trefoil canal caudally at L3-4. Dr. Wiebe opined that Plaintiff may benefit from a left L4-5 re-exploration and decompression surgery including discectomy and foraminotomy and, further, that Plaintiff's surgical options included fusion and/or instrumentation. He suggested that the decision for possible fusion or instrumentation be made based on the inter-operative findings.

On August 5, 2010, consultative physician C. Fracchia, M.D., examined Plaintiff at the request of the state agency for the purpose of performing a physical Residual Functional Capacity ("RFC") assessment. Dr. Fracchia's primary diagnosis was "chronic low back pain with underlying lumbar DDD and DJD and history of hemilaminectomy." Dr. Fracchia opined that Plaintiff could occasionally and frequently lift 10 pounds; could stand and/or walk with normal breaks for a total of at least two hours in an eight hour workday; could sit with normal breaks for a total of about six hours in an eight hour workday; could push and/or pull (including operation of hand/foot controls) with no limitations, other than the same as for lifting or carrying; could occasionally climb, balance, stoop, kneel, crouch, crawl; and that Plaintiff had no manipulative, visual, communicative, or environmental limitations. Dr. Fracchia based her determination on objective findings upon

6

examination, findings in the medical records from treating physicians, and imaging reports submitted by the Plaintiff with her function report.

**C. Vocational Expert Testimony**

Judith Najarian, a vocational counselor, testified as a vocational expert ("VE"). Ms. Najarian classified Plaintiff's past relevant work in a house cleaning position as a day worker (301.689-014) Specific Vocational Preparation ("SVP") level 2 – medium exertional level (but performed at a light exertional level, lifting no more than 10 pounds), unskilled; and her care provider position as home attendant (354.377-014) as SVP level 3 – medium exertional level, semi-skilled. Considering the demands of that work, the limitations of Plaintiff's residual functional capacity ("RFC"), and the Plaintiff's entire medical-vocational profile, Ms. Najarian testified that a similarly capable individual (one with chronic pain, bulging discs, pain in the L4-5, limited to carrying less than eight pounds, who can sit for only one hour in an eight hour day, and who could walk only up to one hour cumulatively in an eight hour day), would not be able to perform the demands of Plaintiff's previous positions. Specifically, the VE explained that both of Plaintiff's prior positions would require the hypothetical individual to carry more than eight pounds. Moreover, the hypothetical limitations between the sitting, standing, and walking would not allow such a hypothetical person to work an eight hour day.

However, Ms. Najarian explained that as Plaintiff actually and generally performed her previous house cleaner position, it would be considered a light exertional level. Ms. Najarian opined that the hypothetical person would be able to perform unskilled, light, or sedentary work. Dr. Najarian testified as to examples of jobs classified as light work, unskilled, SVP 2, such as: "ticket taker" (DOT 344.667-010), with approximately 10,799 jobs available in California and 40,216, nationally; "stock checker apparel" (299.667-014), with approximately 1,750 jobs available in California and 13,447 nationally; or "line worker" (525.687-066), with approximately 5,282 jobs available in California and 61,961 nationally.

7

The VE also testified as to a second scenario where the hypothetical individual could lift 10 pounds occasionally, five pounds frequently; could stand or walk two to four hours per day, cumulatively; required an ambulatory assistive device; had exertional limitations including climbing, pushing, pulling, crouching, crawling, and balancing; and could rarely bend.  As to this hypothetical, the VE testified that there was no work in the national economy that this hypothetical individual could perform.

## LEGAL STANDARD

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

8

(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

*Tackett v. Apfel,* 180 F.3d 1094, 1098-99 (9th Cir. 1999); see also *Bustamante v. Massanari,* 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. *Bustamante,* 262 F.3d at 953–54. If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[1] age, education and work experience. *Tackett,* 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. *Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir. 2000).

**DISCUSSION**

Plaintiff challenges the Commissioner's decision to deny her application for benefits as improper. She asserts the ALJ made an erroneous evaluation of the medical evidence by rejecting the objective medical opinions of the consultative and state physicians, by failing to properly assess Plaintiff's RFC, and by improperly supplanting the ALJ's own medical assessment for that of the

---

[1] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

9

numerous physicians. The Commissioner argues that the ALJ properly rejected the physicians opinions based on the record, that the ALJ's findings were consistent with the objective evidence of record and the conservative treatment provided to Plaintiff.

## I.     The ALJ's Determination

Based on the weight of the medical opinions, the ALJ concluded that the Plaintiff's subjective complaints were greater than the objective findings and not consistent with the objective medical evidence.

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 4, 2009. Her severe impairments were disorders of the back. *See* 20 C.F.R. § 416.920(c). None of these impairments alone or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. The ALJ found that a restriction to the full range of light work was consistent with the longitudinal medical record. In doing so, she considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ concluded that Plaintiff was not capable of performing her prior work as a caretaker, housekeeper, or house cleaner, but that she was able to perform the full range of light work as defined in 20 C.F.R. § 404.967(a). Accordingly, the ALJ determined that the Plaintiff was not disabled as defined by the Social Security Act.

## II.    Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal

10

standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679.  Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## III. Expert Medical Opinions

Plaintiff argues the Commissioner's decision to deny her application for benefits was improper.  Plaintiff challenges the Commissioner's decision on several grounds: (1) there is no substantial medical or vocational evidence in the record to support the legal conclusion that Plaintiff is not disabled within the meaning of the Act; (2) there is no substantial evidence in the record to support the Commissioner's finding that Plaintiff could perform any substantial gainful activity; (3) the evidence in the record supports only the finding that Plaintiff is disabled and has been continuously disabled as that term is defined in the Act at all times relevant to Plaintiff's application, and; (4) new and material evidence exists warranting a remand of this matter for further proceedings. In sum, she asserts that the ALJ failed to properly assess Plaintiff's RFC by rejecting the objective medical opinions of the consultative physicians and fashioning her own medical assessment out of whole cloth.  The Commissioner argues that the ALJ properly rejected the physicians' opinions based on the record in its totality and that her decision is supported by substantial evidence.

In this circuit, the medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion is entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician.  *Id.*, *see also* 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is employed to cure and has a greater opportunity to know and observe the patient.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Although the opinion of a treating physician is afforded the greatest weight in disability cases, it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.; see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti*, 533 F.3d at 1041; S.S.R. 96-5p.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  An ALJ must determine a claimant's RFC based on "all relevant evidence in the record."  *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding.  *Magallanes*, 881 F.2d at 751-55.

A physician's opinion is not binding upon the ALJ, and may be discounted whether another physician contradicts the opinion. *Magallanes,* 881 F.2d at 751.  An ALJ may reject a contradicted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record.  *Lester,* 81 F.3d at 830; *see also Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir.

12

2002).  If there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence."  *Id.; see also Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).

Where a treating or examining physician's opinion is uncontradicted by another doctor, the ALJ must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ must tie the objective factors of the record as a whole to the opinions and findings that she rejects.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

Here, the ALJ was required to set forth specific clear and convincing reasons for rejecting the opinion of the uncontradicted consultative and state physicians.  The ALJ recognized that there was consensus between the consultative physicians that Plaintiff was able to perform a range of work at the sedentary exertional level with only some differences in the degree of specific function-by-function limitations.  But without clear and convincing reasoning, the ALJ determined that these opinions are not supported by the record as a whole.  Specifically, the ALJ wrote,

> The opinions of all of these physicians are generally consistent in that they all assess the claimant is able to perform simple repetitive tasks[sic]; mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration.  These opinions are not supported by the record as a whole.

In support of her findings, the ALJ merely suggests that the "physicians did not have the benefit of considering the additional evidence that was available only after their determinations including subsequent medical evidence and the hearing testimony.  For instance, the claimant has not received any mental health treatment."  This justification does not rise to the level of specificity and clarity required for the ALJ to reject uncontradicted medical opinions.  Moreover, Plaintiff makes no

13

argument that her disability is based on her mental health status, nor do the consultative physicians. Accordingly, the ALJ's observation on that point cannot serve as sufficient to support a contrary finding. Absent from the ALJ's analysis is any specific justification for rejecting the consultative physician's assessment of Plaintiff's RFC, including the specific amount of weight she could carry, as well as her functional limitations. The Court concludes that the ALJ failed to support her findings with clear and convincing reasons to reject the uncontradicted medical opinions of the physicians.

### A. Plaintiff's Activity Level

The Ninth Circuit has determined that the opinion of a physician may be given less weight when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ noted Plaintiff was able to go to church, perform self-care, do light housework, and drive a car. Further, Plaintiff testified that she was unable to work as a result of her constant pain, and she was limited to sitting for less than two hours, cumulatively, in an eight hour day, and could not stand for more than 40 minutes without rest. However, the ALJ does not explain how Plaintiff's activities are inconsistent with the opinion of the physicians that Plaintiff could lift no more than 10 pounds and was limited to standing or walking to approximately two hours in an eight-hour day. Consequently, these activities do not support the decision to give less weight to the opinion of the physicians.

### B. Inconsistency with the Medical Record

The Ninth Circuit has determined that physician's opinions may be rejected where it is "unsupported by the record as a whole." *Mendoza v. Astrue,* 371 Fed. Appx. 829, 831–32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2003)). Further, an opinion may be rejected when an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 603 (9th Cir. 1999) (explaining

internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician).

Importantly, though, when an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set [ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir. 1986).  The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir. 1988).

Here, although the ALJ opined the limitations set forth by the consultative and state physicians were "not supported by the record as a whole," she fails to identify and discuss specific evidence that conflicted with the physicians' opinions that Plaintiff was limited to lifting and carrying 10 pounds occasionally, five (or alternatively ten) pounds frequently, standing and walking at least two hours in an eight hour workday, sitting for less than six hours, and that she has at least some exertional limitations, possibly including climbing, pushing, pulling, crouching, crawling, and balancing.  More than one doctor suggested Plaintiff was a candidate for surgery.  Rather, the ALJ offered only her conclusion that the record in its entirety was inconsistent with the opinions. Because the ALJ failed to set forth "a detailed and thorough summary of the facts and conflicting clinical evidence," the ALJ failed to properly evaluate the limitations identified by the consultative and state physicians.  *See Cotton,* 799 F.2d at 1408.

Moreover, the ALJ failed to discuss Dr. Wlasichuk's opinion that Plaintiff could occasionally lift 10 pounds, frequently lift five pounds, and had exertional limitations including occasionally climbing, pushing, pulling, crouching, crawling, and balancing, but only rarely.  The ALJ also failed to address Dr. Fracchia's opinion that Plaintiff could occasionally and frequently lift 10 pounds; could stand and/or walk with normal breaks for a total of at least two hours in an eight hour

15

workday; could sit with normal breaks for a total of about six hours in an eight hour workday; could push and/or pull (including operation of hand/foot controls) with no limitations, other than the same as for lifting or carrying; and could only occasionally climb, balance, stoop, kneel, crouch, crawl. Because the ALJ failed to explain in any manner why these limitations were not included in the RFC, she failed to carry the burden to provide "specific and legitimate reasons" for rejecting portions of Dr. Wlasichuk's opinion.  *See Lester,* 81 F.3d at 830.

## IV. Remand Is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.,* 859 F.2d 1396, 1399 (9th Cir. 1988). Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to reject the consultative and state physicians' opinions by identifying conflicting evidence in the record.  The ALJ failed to address the limitations identified by Dr. Wlasichuk and Dr. Fracchia, and the vocational expert was not adequately questioned regarding such limitations.  Thus, the matter should be remanded for the ALJ to re-evaluate the medical evidence and obtain testimony from the

vocational expert regarding whether Plaintiff would be able to perform other sedentary work, and whether that work is available in adequate numbers in the relevant geographic region and nationally.

## V.  CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes the ALJ erred in evaluating the medical evidence and in rejecting the opinion of the consultative and state physicians.  Because the ALJ failed to apply the correct legal standards, the decision should not be upheld by the Court.  *See Sanchez,* 812 F.2d at 510.  Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision.  *See Harman v. Apfel,* 211 F.3d 1172, 1179 (9th Cir.), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000); *Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir. 1984).  The Court offers no findings on any remaining issues because remand is appropriate for further proceedings.

Accordingly, **IT IS HEREBY ORDERED:**

1. pursuant to sentence four of 42 U.S.C. § 405(g), that the matter is **REMANDED** for further proceedings consistent with this decision; and
2. the Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Maria Valles and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 20, 2014**                              **/s/ Sandra M. Snyder**
                                                                       UNITED STATES MAGISTRATE JUDGE